955 F.2d 46
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Leavy WILLIAMS, Jr., Plaintiff-Appellant,
v.
G. Michael BROGLIN, A. Metzus, and Dr. Kummar, M.D.,
Defendants-Appellees.
 No. 90-3018.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 10, 1992.[1]
Decided Feb. 25, 1992.
 
 Before CUMMINGS and CUDAHY, Circuit Judges, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 Leavy Williams, Jr. was incarcerated in several Indiana jails as a result of a 1985 arrest. Williams has brought a civil rights action against prison supervisory officials and a physician citing violations of the Eighth Amendment prohibition against cruel and unusual punishment. The district court granted summary judgment for the defendants, and as a result of that decision dismissed a pendent state tort claim. Williams appeals the decision.
 
 I. Background
 
 2
 Leavy Williams was arrested in spring 1985 for the rape of his two daughters and attempted murder of his grandson. Approximately a month prior to his arrest, Williams took a tumble down a flight of stairs. He claims that the stair incident resulted in injuries to his head, neck, and back--injuries for which he did not seek treatment. Following his arrest, he spent time in several Indiana prisons. Initially, he was held in the Lake County Jail, where he complained to the medical director there that he was suffering from headaches, neck pain, and blackouts related to the tumble. He was prescribed medication for those ailments. Next, Williams was held at the prison in Plainfield briefly while waiting for transfer to his permanent facility, Westville. The Plainfield physician did not perform tests on Williams due to his impending transfer, and maintained treatment by medication. Once reaching Westville, Williams was examined by several Department of Corrections physicians as well as nine "outside" specialists for various ailments. Additionally, he had several tests performed to seek the cause of his ailments. Ultimately, Williams was diagnosed as having a pinched nerve, and surgery was performed to correct the problem in summer 1988. Voluminous medical records document Williams' complaints and treatments throughout his incarceration.
 
 II. Analysis
 
 3
 Williams' claim, in essence, is that he was improperly diagnosed and as a result he experienced a 32-month delay before his medical problem was corrected. His claim is not that he was deprived of medical treatment. He argues that the improper diagnoses and resulting delay in successful treatment violate the Eighth Amendment. He is incorrect.
 
 
 4
 The Eighth Amendment, through the Fourteenth Amendment, prohibits states from inflicting cruel and unusual punishment upon prisoners. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991). Before a court will find an Eighth Amendment violation, two separate inquiries must take place. Initially, the conduct being complained of must be objectively harmful enough to rise to the level of an Eighth Amendment violation. Id. at 2326. Next, the actor, subjectively, must have intended to punish the prisoner--either by virtue of actual intent, or conduct that so closely approached deliberateness that the actor can be said to have intended to punish. Id. The standard is "actual knowledge of impending harm easily preventable." Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71 (1986).
 
 
 5
 Denial of medical treatment may rise to the level of an Eighth Amendment violation when a prisoner can establish that prison official acted with deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976). Mere negligence on the part of a physician in diagnosing or treating a medical condition is not conduct actionable pursuant to the Eighth Amendment. Id. at 606, 97 S.Ct. at 292. Williams argues that the delay in proper diagnosis, and consequently in his surgery, was cruel and unusual. This statement is true only if the physician was deliberately trying to harm the petitioner by not accurately diagnosing his ailment. Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir.1991). The record does not reveal any such deliberateness. Rather, the record is replete with evidence of tests and examinations administered to determine the cause of Williams' pain. Williams' access to medical care was not delayed, and the defendants took more than just minimum steps to assess Williams' illness. Cf. id. Williams was seen by prison or outside medical staff on dozens of occasions--evidencing attention, not deliberate indifference, to Williams' medical needs. Cf. Estelle, 429 U.S. at 107, 97 S.Ct. at 292.
 
 
 6
 This court reviews a grant of summary judgment de novo, drawing all inferences in favor of the nonmoving party, and applying the law to the undisputed facts. Kinney v. Indiana Youth Center, 950 F.2d 462 (7th Cir.1991). A court may award summary judgment if no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (1991). The facts are, for the most part, undisputed. Because Williams received adequate medical attention, we agree that the defendants were properly granted summary judgment.
 
 
 7
 Williams requested that his malpractice claim be reinstated. A complaint of careless diagnosis or negligent treatment should be brought in a state court. Medical malpractice is not an Eighth Amendment violation merely because the patient is a prisoner. Estelle, 429 U.S. at 106, 97 S.Ct. 292. Because the district court resolved the federal cause of action, it may dismiss the pendent state malpractice claim. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966); J.D. Marshall Int'l Inc. v. Redstart Inc., 935 F.2d 815, 819 n. 2 (7th Cir.1991). Williams is free to pursue that action in a different forum.
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs